FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ APR 2 0 2009
P.M. ___
TIME A.M. ___

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MANUEL PEREZ,

                Plaintiff,

       -against-

ANDREW CUOMO, KERRI HOOVERT,
KRISTOPHER CAMACHO, KENNETH
PACCIO, RICHARD A. BROWN,
MARYAM M. LIPKANSKY,
JOSEPH GROSSO, and SEYMOUR ROTKER,

                Defendants.
------------------------------------------------------------x

**MEMORANDUM AND ORDER TO SHOW CAUSE**

09-CV-1109 (SLT)

TOWNES, United States District Judge:

Plaintiff Manuel Perez, who is currently incarcerated at Green Haven Correctional Facility, brings this *pro se* action pursuant to 42 U.S.C. § 1983, alleging that police officers, prosecutors, and judges violated his constitutional rights in connection with his arrest and prosecution. This action was initially filed in the United States District Court for the Southern District of New York on January 5, 2009, but was transferred to this Court by order dated February 23, 2009. *Perez v. Cuomo*, No. 09 Civ. 1625, slip op. (S.D.N.Y. Feb. 23, 2009). Plaintiff's application to proceed *in forma pauperis* is granted, but plaintiff is directed to show cause, within thirty (30) days of the date of this Order, why this action should not be dismissed. In addition to, or instead of, making this showing, plaintiff may request that this Court construe this action as a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND

The following facts are drawn from plaintiff's complaint, the allegations of which are assumed to be true for purposes of this Order. All of these facts relate to plaintiff's arrest and prosecution for the crimes for which he is currently incarcerated.

Plaintiff was arrested in the early morning hours of January 29, 2002 (Complaint at 10). Plaintiff was in the vicinity of a fast-food restaurant at 39-16 111th Street, Queens, when two officers from the 115th Precinct – defendants Kristopher Camacho and Kerri Hoovert – approached and asked him questions concerning his whereabouts that evening (*Id.*). Plaintiff told the officers, "[I]f I am not under arrest for anything, I do not have anything to say," and attempted to leave the vicinity (*Id.*). However, Camacho stopped and frisked plaintiff (*Id.*). Although Camacho found nothing, Hoovert performed a second search about one minute later and "mysteriously found" an empty gun magazine in one of plaintiff's pockets (*Id.*, at 10, 11).

Although plaintiff immediately told Camacho that Hoovert had "planted" the magazine on him, plaintiff was placed in the back of a police cruiser while Camacho, Hoovert and other unidentified officers searched for a gun (*Id.*, at 10). After the police recovered a pistol, allegedly from the inside of the restaurant, and as they were talking to one another outside, plaintiff suffered an asthma attack (*Id.*, at 10, 11). Plaintiff yelled for help, but the officers told plaintiff to "shut up" and threatened to gag him (*Id.*, at 11).

After a second, unsuccessful attempt to tell police that he "needed medical attention immediately," plaintiff "decided to kick out the back [window] o[f] the police cruiser" (*Id.*). Although plaintiff remained handcuffed in the back of the car, the police responded by squirting pepper spray in plaintiff's eyes (*Id.*). Plaintiff was promptly taken to the hospital thereafter, but alleges that he was "physically and mentally abused" by Camacho, Hoovert and other officers en route (*Id.*).

After being treated at the hospital, plaintiff was taken to the 115th Precinct for processing (*Id.*). According to plaintiff, he was not charged with gun possession, but only with criminal

mischief in the fourth degree for breaking the car window (*Id.*). Thereafter, the police attempted to take plaintiff to Queens County Criminal Court (*Id.*). However, plaintiff suffered another asthma attack and "had to be rushed back to the hospital for a second time" (*Id.*).

After plaintiff was treated, he was returned to the 115th Precinct. There, at approximately 12:15 a.m. on January 30, 2002, a detective – defendant Kenneth Paccio – placed plaintiff in three lineups in connection with robbery cases (*Id.*, at 12, 15, 18). According to plaintiff, Paccio "forced [him] by using threats to tell him the number of the seat" in which plaintiff would be sitting, then communicated that information to the witnesses before they viewed the lineups (*Id.*, at 15, 18). Plaintiff claims that, as a result, he was misidentified as a perpetrator of the robberies (*Id.*). In addition, plaintiff suggests that Paccio wrote a report stating that a fourth witness had identified plaintiff, even though that witness did not even view a lineup (*Id.*, at 18).

Around 12:30 a.m. on January 30, 2002, the police began questioning plaintiff about his involvement in the robberies (*Id.*, at 11-12). Plaintiff alleges that he was never read his *Miranda* rights (*id.*, at 14), and that the police specifically attempted to elicit an admission that plaintiff owned the gun recovered from the restaurant (*Id.*, at 12). Although the police allegedly "verbally abus[ed]" and threatened plaintiff during the questioning, plaintiff denied possessing the gun or committing a robbery (*Id.*).

Plaintiff claims that at some point thereafter – perhaps prior to plaintiff's arraignment – Camacho and Hoovert "combined with" the prosecutor, defendant Maryam Lipkansky, and "fabricated all Police Reports" to make it appear that plaintiff had been arrested for robberies (*Id.*, at 12). When plaintiff was arraigned, the judge – identified in the complaint only as an

3

"Honorable County Court Judge"[1] – declined to hold a hearing to determine if plaintiff's arrest was legal (*Id.*, at 12, 13). Plaintiff alleges that the judge "knew that [plaintiff] had been illegally detained and that the presumed probable cause for the arrest and accusation of robbery were completely fabricated" (*Id.*, at 12).

Plaintiff claims that Camacho, Hoovert and Lipkansky also fabricated much of the evidence presented before the Grand Jury, at the pre-trial hearings, and at the trial itself. According to plaintiff, a complainant named John Gutierres falsely testified before the Grand Jury that he identified plaintiff prior to his arrest (*Id.*, at 13).[2] However, Gutierres claimed that plaintiff was sitting in a police van at the time of the identification (*Id.*, at 13, 17). Plaintiff alleges that he was in the restaurant at the time of the alleged identification, and that only the defendant officers themselves were in the van (*Id.*).

Plaintiff further alleges that at a *Mapp* hearing conducted in mid-February 2003 before defendant Joseph Grosso – an acting justice of the New York Supreme Court, Queens County – Camacho and Hoovert again falsely testified that, prior to plaintiff's arrest, Gutierres had identified plaintiff as the person who robbed him (*Id.*, at 12-13). Plaintiff claims that Camacho and Hoovert also presented fabricated ballistics evidence at the *Mapp* hearing, since the gun allegedly recovered in the restaurant – unlike the gun used in the robbery – was inoperable (*Id.*, at 14). In addition, plaintiff claims that Camacho, Hoovert and Lipkansky convinced another

---

[1]This Court will take judicial notice of the fact that there is no County Court in Queens County. *See* http://www.courts.state.us/courts/11jd/index.shmtl. This Court assumes that plaintiff was arraigned by a judge in Queens County Criminal Court.

[2]This same complainant is identified elsewhere in the complaint as "John Gutierrez." However, prosecution paperwork attached to plaintiff's complaint as Exhibit C identifies this complainant as "John Gutierres." Accordingly, this Court will use the latter spelling.

complainant, Eduardo Checo, to close his store so as to permit a bullet to be fired into a refrigerator therein for the purpose of creating evidence against plaintiff, which was then used at trial (*Id.*).

Finally, plaintiff claims that the evidence presented at his trial before defendant Justice Seymour Rotker was not only insufficient to prove his guilt beyond a reasonable doubt, but sufficient to prove that he had "nothing to do with this case ... to an overwhelming probability" (*Id.*). Plaintiff alleges that Checo was the only witness who "accused" him at trial, but that Checo's testimony was incredible for various reasons (*Id.*, at 15). Although there were four other prosecution witnesses, plaintiff claims that none was able to make an in-court identification and that the prosecution presented no forensic evidence (*Id.*, at 13-14).

Nonetheless, plaintiff was convicted after trial of three counts of robbery in the first degree, and one count each of robbery in the second degree, criminal mischief in the fourth degree and resisting arrest. Plaintiff's conviction was affirmed by the Appellate Division of the Supreme Court of the State of New York, Second Department, on December 11, 2007 (*Id.*, at 9; *People v. Perez*, 46 A.D.3d 708, 847 N.Y.S.2d 226 (N.Y. App Div. 2007)). Plaintiff's application for leave to appeal to the New York Court of Appeals was denied on March 7, 2008 (Complaint at 9; *People v. Perez*, 10 N.Y.3d 708, 857 N.Y.S.2d 48 (N.Y. 2008)). According to this Court's Electronic Case Filing system, plaintiff has yet to file a petition for a writ of habeas corpus challenging this conviction.

In late December 2008, plaintiff commenced this action, which purports to be a civil rights action pursuant to 42 U.S.C. § 1983. In his complaint, plaintiff specifically alleges that defendant Camacho, Hoovert and Paccio "fabricated evidence" against him, "combined with"

5

defendant Lipkansky and defendant, Richard A. Brown – the District Attorney of Kings County (Complaint at 6, 17). Plaintiff further claims that defendants Grosso and Rotker violated his rights by failing to conduct a *Dunaway* hearing to determine whether the police had probable cause to arrest plaintiff, and that Justice Rotker wrongly found that plaintiff was fit to stand trial and to be sentenced, despite the fact that three psychiatrists had found him unfit to proceed (*Id.*, at 17). In addition, plaintiff names New York State Attorney General Andrew Cuomo as a defendant, stating that he "holds [plaintiff] in State Prison with false testimonies and also fabricated evidence" (*Id.*). However, plaintiff does not request his immediate release from incarceration. Rather, he seeks only damages in the amount of $27 million from each defendant. (*Id.*, at 6)

## DISCUSSION

### A. *Standard of Review*

Title 28, section 1915A, of the United States Code requires this Court to review the complaint in a civil action in which a prisoner seeks redress from officers or employees of a governmental agency and to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, ... fails to state a claim upon which relief may be granted ... [or] seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b); *see Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam). An action is "frivolous" when "either: (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory. *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (internal quotations and citation omitted).

*Pro se* submissions are held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Indeed, a *pro se* plaintiff's complaint must be read liberally and interpreted as raising the strongest arguments it suggests. *See McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," this Court must grant leave to amend it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999).

### B. Judicial Immunity

Two of the defendants from whom plaintiff seeks only monetary damages are clearly immune from such relief. Defendants Joseph Grosso and Seymour Rotker are both justices of the Supreme Court of the State of New York. As judges, they enjoy absolute immunity from suits for damages arising out of judicial acts performed in their judicial capacities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991); *Forrester v. White*, 484 U.S. 219, 225 (1988). This absolute judicial immunity "is not overcome by allegations of bad faith or malice," nor can a judicial officer be deprived of immunity "because the action he took was in error ... or was in excess of his authority." *Mireles*, 502 U.S. at 11, 13 (quotations and citations omitted). This immunity may be overcome only if the court is alleged to have taken nonjudicial actions or if the judicial actions taken were "in the complete absence of all jurisdiction." *Id.*, at 11-12.

There is no question that plaintiff's claims against these two judges stem from judicial acts performed in their judicial capacities. Indeed, plaintiff's only claims against the judicial defendants relate to specific judicial rulings that plaintiff did not like. First, although plaintiff expressly alleges that Justice Grosso conducted a *Mapp* hearing, Complaint at 12, plaintiff faults

7

both judicial defendants for failing to hold a *Dunaway* hearing to determine if there was probable cause for his arrest. Second, plaintiff alleges that Justice Rotker erred in ruling that plaintiff was fit to proceed with trial and sentencing, despite psychiatric evidence to the contrary. Since both judges enjoy absolute immunity from liability for these judicial acts, the claims against Justices Grosso and Rotker must be dismissed pursuant to 28 U.S.C. § 1915A(b).

*C. Section 1983*

Plaintiff's claims against the remaining six defendants all appear to be either "clearly baseless" or "based on an indisputably meritless legal theory." *Livingston*, 141 F.3d at 437. All of these claims are based on 42 U.S.C. § 1983 ("§1983"), which "provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). In order to maintain a §1983 action, a plaintiff must allege both that he was injured by either a state actor or a private entity acting in concert with a state actor under color of state law, *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992), and that the conduct complained of deprived him "of rights, privileges, or immunities secured by the Constitution or the laws of the United States." *Pitchell v. Callan*, 13F.3d 545, 547 (2d Cir.1994).

*D. Supervisory Liability*

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d. 880, 885 (2d Cir. 1991)). Supervisory liability cannot rest on *respondeat superior* or on "linkage in the ... chain of command." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citing *Al-*

*Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989), and quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)). A supervisory official is deemed to have been personally involved in a constitutional violation if that official directly participated in the infraction; if, after learning of a violation, he failed to remedy the wrong; if he created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue; or if he was grossly negligent in managing subordinates who caused the unlawful condition or event. *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

In this case, plaintiff names Queens County District Attorney Richard A. Brown and New York State Attorney General Andrew Cuomo as defendants. He suggests that these defendants "combined with" the other defendants to keep him in state prison. (Complaint at 17.) However, plaintiff fails to attribute any particular action or omission to either of these defendants, nor does he allege any policy or custom promulgated by them. As he has failed to show how these supervisory officials violated his rights, the claims against Defendants Brown and Cuomo must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

*E. The Alleged Constitutional Violations*

Plaintiff's complaint does not specify which "rights, privileges, or immunities secured by the Constitution or the laws of the United States" have been violated by the remaining four defendants. However, reading the complaint liberally, this Court construes plaintiff's pleading as suggesting four federal Constitutional claims. First, plaintiff is clearly alleging that defendants Camacho and Hoovert falsely arrested him on January 29, 2002. Second, plaintiff appears to be alleging that these officers used excessive force by spraying him with pepper spray as he sat handcuffed in the back of their patrol car. Third, plaintiff is unquestionably alleging malicious prosecution by defendants Camacho, Hoovert, Paccio and Lipkansky, all of whom are alleged to

have fabricated evidence. Finally, plaintiff appears to be alleging that these four defendants violated his due process to a fair trial. These four claims are addressed, seriatim, below.

*1. False Arrest and Excessive Force*

Plaintiff's first two Constitutional claims both appear to be time-barred. In New York State, the statute of limitations for actions brought pursuant to § 1983 is three years. *Owens v. Okure*, 488 U.S. 235, 251 (1989); *Paige v. Police Dep't of City of Schenectady*, 264 F.3d 197, 199, n.2 (2d Cir. 2001). The date of accrual for a § 1983 claim is determined by federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Although a § 1983 claim generally accrues "when the plaintiff knows or has reason to know of the harm" he or she has suffered, *see Connolly v. McCall*, 254 F.3d 36, 41 (2d Cir. 2001) (quoting *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994)), the precise date varies depending on the type of claim alleged.

Courts in this Circuit "have repeatedly held that claims for ... excessive force accrue on the date ... the force is used." *Daniel v. Safir*, 175 F. Supp. 2d 474, 480 (E.D.N.Y. 2001) (citing cases); *see Singleton v. New York*, 632 F.2d 185, 192 (2d Cir. 1980). However, the period of limitations for a claim of false imprisonment, which includes false arrest, begins to run "when the alleged false imprisonment ends." *Wallace*, 549 U.S. at 389. As the *Wallace* Court explained, false imprisonment ends not when the plaintiff is eventually released from custody, but when the plaintiff becomes held pursuant to legal process – "when, for example, he is bound over by a magistrate or arraigned on charges." *Id.*

In this case, plaintiff alleges that the police used excessive force against him on January 29, 2002. Plaintiff does not provide the precise date on which he was arraigned, but implies that his arraignment took place on or about January 30, 2002. Plaintiff did not commence this action,

however, until sometime after December 29, 2008.³ Accordingly, plaintiff's false arrest and excessive force claims appear to be time-barred.

The statute of limitations applied to § 1983 actions may be equitably tolled in exceptional circumstances. Like the length of the limitations period, equitable tolling is governed by state tolling provisions. *Wallace*, 549 U.S. at 394; *Board of Regents v. Tomanio,* 446 U.S. 478, 485-86 (1980). In New York, the statute of limitations period may be extended "[i]f a person entitled to commence an action is under a disability because of infancy or insanity at the time the cause of action accrues ...." New York Civil Practice Law and Rules § 208 (McKinney's 2003).

Although plaintiff does not assert any reason for the delay in filing, he does allude to a history of mental illness, stating that he has "been receiving psychiatric treatment for the past 14 years" and listing various medications. Complaint at 9. In light of this lengthy history, this Court will not dismiss plaintiff's false arrest or excessive force claims at this juncture. *See Abbas v. Dixon*, 480 F.3d 636, 639-40 (2d Cir. 2007) (district court should not dismiss a *pro se* prisoner's complaint on the basis of an anticipated statute-of-limitations defense without first granting notice and an opportunity to be heard). Rather, the Court hereby directs plaintiff to show cause in writing within thirty (30) days of the date of this Order why his false arrest and excessive force claims should not be dismissed as time-barred. If plaintiff has a basis for asserting equitable tolling of the statute of limitations on the basis of insanity, he must provide the court with information regarding the nature and duration of his disability.

---

³Although plaintiff's complaint was received by the Pro Se Office at the United States District Court for the Southern District of New York on January 5, 2009, it is deemed to have been filed when it was placed in the prison mailbox. *See Houston v. Lack*, 487 U.S. 266, 276 (1988). Plaintiff's complaint does not include an affidavit indicating when plaintiff delivered his pleading to prison authorities, but his papers are dated December 29, 2008.

11

*2. Malicious Prosecution*

In order to establish liability for malicious prosecution, a plaintiff must establish the following elements: (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as motivation for defendant's actions. *Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004); *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 417 (2d Cir. 1999). Here, plaintiff cannot show that the prosecution terminated in his favor. To the contrary, plaintiff himself alleges that his convictions have been upheld on appeal. Complaint at 9; *People v. Perez*, 46 A.D.3d 708, 847 N.Y.S.2d 226 (N.Y. App Div. 2007), *aff'd*, 10 N.Y.3d 708, 857 N.Y.S.2d 48 (N.Y. 2008). Accordingly, the complaint fails to state a claim for malicious prosecution, and such claims must be dismissed as to all defendants pursuant to 28 U.S.C. § 1915A(b).

*3. Denial of Constitutional Right To Fair Trial*

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. 1983." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) (citing cases). A § 1983 claim for the violation of the due process right to a fair trial is, "in essence, 'a claim for damages attributable to an unconstitutional conviction.'" *Jovanovic v. City of New York*, No. 04 Civ. 8437 (PAC), 2006 WL 2411541, at *12 (S.D.N.Y. Aug. 17, 2006) (citing *Heck v. Humphrey*, 512 U.S. 477, 489-90 (1994). However, "in order to recover damages for allegedly unconstitutional conviction ... or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order,

declared invalid by a state tribunal ... , or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87. Since plaintiff's conviction remains valid, plaintiff's claim for violation of his right to a fair trial is not cognizable under § 1983, *id.*, and must be dismissed as to all defendants pursuant to 28 U.S.C. § 1915A(b).

*F. Habeas Corpus*

Although plaintiff brings this action pursuant to § 1983 and seeks only money damages, this Court notes that plaintiff is challenging the constitutionality of his continued confinement. Indeed, while plaintiff has not named the warden of Green Haven Correctional Facility as a defendant, he has sued Attorney General Andrew Cuomo, alleging that the Attorney General "holds [him] in a State Prison" based on a conviction obtained with "fabricated evidence." Complaint at 17. Such allegations, together with the fact that plaintiff filed this action within one year after the New York Court of Appeals denied his leave application, suggest that plaintiff may have intended this action to serve as a petition for a writ of habeas corpus. "[H]abeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release ...." *Heck*, 512 U.S. at 481 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 488-90 (1973)).

Although this Court could construe this complaint as an petition for a writ of habeas corpus, it declines to do so unless plaintiff requests that this submission to be construed in that manner. Under the Antiterrorism and Effective Death Penalty Act of 1996, a State prisoner is typically limited to a single petition for habeas relief. *See* 28 U.S.C. § 2244(b)(3). While this Court's Electronic Case Filing system does not indicate that plaintiff has yet petitioned this Court for habeas corpus relief with respect to his March 2005 conviction, this Court does not know whether plaintiff has errantly filed such a petition in another district court or whether there are pending State court motions for post-conviction relief. Accordingly, this Court will not consider

construing this action as a petition for habeas corpus relief unless plaintiff expressly requests that it do so.

## CONCLUSION

For the reasons set forth above, the claims against Andrew Cuomo, Richard A. Brown, Joseph Grosso, and Seymour Rotker are dismissed pursuant to 28 U.S.C. § 1915A(b). Plaintiff's § 1983 claims for malicious prosecution and violation of his due process right to a fair trial are also denied. Plaintiff must show cause in writing on or before May 22, 2009, why his false arrest and excessive force claims should not be dismissed as time-barred. To permit plaintiff time to make that showing, all further proceedings shall be stayed until that date. No summons shall issue at this time.

In addition to, or instead of, showing cause why his § 1983 claims for malicious prosecution and violation of his due process right to a fair trial are not time-barred, plaintiff may request, on or before May 22, 2009, that this Court construe this action as a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. If plaintiff fails to respond to this Order within the time allowed, this action will be dismissed in its entirety pursuant to 28 U.S.C. § 1915A(b). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

SANDRA L. TOWNES
United States District Judge

Dated: April 17, 2009
Brooklyn, New York